## Lester v. Garrett.

(Decided January 29, 1918).

### Appeal from Caldwell Circuit Court.

1. Mortgages—Defeasance—Collateral Verbal Agreement.—A purchaser of improved real estate had it conveyed to a third party to secure payment to him of the purchase money advanced under a written agreement to pay to the purchaser $1,000 and take absolute title to the property, if the purchaser failed to redeem it at the time stipulated. Evidence held to establish a verbal agreement, collateral to the defeasance agreement, that whoever of them should become the owner of the property should reimburse the other for expenditures made upon the property by him and necessary to make it productive.

2. Interest—Tender.—The tender of an amount less than the indebtedness does not stop the interest on the debt.

MILLER & MORSE for appellant.

JOHN C. GATES for appellee.

Opinion of the Court by Judge Clarke—Reversing.

On September 1, 1913, the plaintiff, Charles F. Lester, entered into a written contract with the Kentucky College for Women for the sale and conveyance to him of about six acres of land in Princeton, Kentucky, upon his payment, not later than September 20, 1913, of $5,000.00 in cash and the execution of two notes for $7,000.00 each, due in one and two years respectively thereafter, bearing interest from date, and to be secured by lien retained in the deed. Before the execution of the deed, Lester, by written endorsement thereon, assigned the contract to the defendant, Edward Garrett, to whom a deed for the property was executed by the Kentucky College for Women on October 1, 1913, at which time the following contract between Lester and Garrett was executed:

"This agreement made and entered into by Edward Garrett and Charles F. Lester, both of Princeton, Kentucky,

"Witnesseth: The said Edward Garrett has this day purchased for Charles F. Lester the ground and building in Princeton, Kentucky, known as "Princeton Collegiate Institute," for the sum of nineteen thousand dollars ($19,000.00), for which deed has this day been executed to said Edward Garrett by proper authorities.

"Now it is hereby agreed and understood that the said Charles F. Lester has the right to redeem said property on or before January 1st, 1914, by paying to the said Edward Garrett the sum of nineteen thousand dollars ($19,000.00) together with the interest on same at the rate of six per cent. from date hereof, also to pay $20.00 to said Edward Garrett for expenses to Danville, Ky., and also to pay back all taxes and insurance on property paid by the said Edward Garrett. But should the said Charles F. Lester fail to redeem said property as above stated, then and in that event, the said Edward Garrett pays to Charles F. Lester the sum of $1,000.00, and the property above described becomes the property of Edward Garrett and his heirs forever. This_____day of_____, 1913.

"(Signed) Edward Garrett.
"Attest:
"R. M. Pool."

Upon this property are two buildings; one known and referred to in the record as the college building, and the

other as the dormitory building, which, prior to 1913, were heated by one plant located in the basement of the college building.

Immediately after Lester entered into the contract for the purchase of this property, and before its assignment to Garrett he executed to the trustees of the Princeton Graded School the following contract:

"This writing witnesseth: That Charles F. Lester hereby lets and rents to the trustees of the Princeton Graded School, the College building in Princeton, Kentucky, heretofore belonging to Princeton Collegiate Institute, for the sum and price of six hundred dollars for the school year 1913 and 1914, to be used for school purposes, beginning September 1, 1913, and ending July 31, 1914, said rental to be paid in four payments, to-wit: On the first day of November, 1913, $150.00; first day of January, 1914, $150.00; first day of March, 1914, $150.00; and first day of May, 1914, $150.00

"It is understood and agreed that the lessee named above shall have the use of the south side grounds of said institute or building, for playgrounds, and in front of said building, and from the north side thereof, out to the Fredonia road, and a sufficient space on the north side of said building for a passway, or ingress and egress for the pupils using said school building. It is further stipulated that the lessor is to paper three class rooms to be designated by the lessee and is to repair the machinery and boiler of the furnace, so as to render same in a reasonably fit condition for use.

"The lessee undertakes that it will return the building and premises to the lessor, at the end of said term in as good condition as when received, ordinary wear and decay excepted, and upon failure to pay the amount stipulated at any of the pay periods, the lessee will surrender possession without notice.

"This instrument of writing is issued in duplicate each party retaining a copy thereof.

"Witness our hands, this the 1st day of September, 1913.                                      C. F. LESTER."

Lester testified that, in order to comply with the provisions of this contract, he "repaired the machinery and boiler of the furnace under the college building so as to render same in a reasonably fit condition for use"; that to do so it was necessary to disconnect the pipes leading to and heating the dormitory building; and that, in order

to heat the dormitory building so that it could be rented, it was necessary to install a furnace in the latter building, and this he did in the month of November, 1913; and that a number of the rooms in the dormitory were rented by him to different tenants at $7.00 a room per month, he furnishing light, heat and janitor service.

Plaintiff not being able, on January 1, 1914, to repay to the defendant the purchase money for the property and redeem it according to the terms of his contract with Garrett, Garrett notified the tenants of both buildings not to pay any further rent to the plaintiff; and from that day the defendant collected all of the rents due from the tenants of both buildings, but plaintiff continued to furnish the light, heat, and janitor service for the dormitory building and paid some accounts for repairs which he had ordered upon the property. Plaintiff collected all of the rents due from the tenants in the dormitory up to January 1, 1914, amounting to $131.00; and of the rents due upon the college building up to January 1, 1914, the defendant collected $44.00, while the remainder thereof, $106.00, was paid by the trustees of the school district in satisfaction of a draft, drawn or accepted by the plaintiff in favor of the Kentucky College for Women.

On March 27, 1916, plaintiff filed this action against the defendant, seeking to recover the $1,000.00 which, in their contract of October 1, 1913, the defendant had agreed to pay him in the event he failed to redeem the property, and, in addition, the sums he had paid out in installing the furnace in the dormitory, for furnishing heat, light and janitor service to the tenants in that building, and for the sums he had expended for repairs upon the property, alleging that he and the defendant had, subsequent to the execution of their contract, entered into a verbal contract that whoever of them finally became the owner of the property should reimburse the other for such expenditures as he had made upon the property. Plaintiff filed with his petition an itemized account of the expenditures made by him for which he claimed reimbursement from the defendant under their verbal contract, aggregating $935.91 exclusive of items of interest. The defendant, in his answer, as to the $1,000.00 due under the written contract, pleaded a tender of payment at or about the time it was due, and as to the account for $935.91 for expenditures made upon the property pursuant to the alleged verbal agreement, the de-

fendant denied that he had entered into any such agreement, or that such expenditures had been made by plaintiff and pleaded further that the $1,000.00 he had agreed by the written contract to pay plaintiff was "to reimburse him for any expense that he might incur in connection with the negotiations for the purchase of the property from the said corporation, or in making repairs or improvements thereon assumed by the plaintiff'.'; and that if the plaintiff made the improvements claimed to have been made by him upon the college and dormitory buildings, he made them without consulting the defendant and without his knowledge or consent, and that he received no benefit or advantage whatever therefrom. Plaintiff by reply traversed the affirmative allegations of the answer. Many immaterial matters are set out in the pleadings, but the foregoing statement sufficiently explains the issues that were presented. Judgment was rendered in favor of the plaintiff for $1,000.00 with interest thereon only from the date of the judgment and dismissing his claim for reimbursement, under the alleged verbal agreement, for his expenditures, and from that judgment plaintiff has prosecuted this appeal.

But two questions are presented upon the appeal: First, whether the plaintiff should have been allowed interest upon the $1,000.00, admittedly due him, from January 1, 1914; and second, whether the proof sustained the alleged verbal contract by which the defendant agreed to reimburse the plaintiff for expenditures made by him upon the property. We shall first discuss the latter of these propositions, because its decision will also determine the first proposition.

1. Plaintiff testified positively that the defendant agreed with him, after the execution of the written contract between them, that whoever of them finally became the owner of the property was to bear the expense of necessary improvements and expenditures made by the other, which would carry with it, of course, the right of the party who thus became the owner of the property and bore these expenses to collect the rents due from the tenants. He further testified that he made the expenditures upon the property pursuant to that agreement, and that such expenditures were necessary in order to carry out his contract with the trustees of the Princeton Graded School District and in order to make productive the dormitory building which was rented. There is no denial

of any of this testimony of the plaintiff, except defendant denied that he entered into the verbal agreement, or that he had any knowledge of any of the expenditures except that made for installing the furnace in the dormitory building. Although denying that he had any knowledge of these expenditures, or that he was in any way benefited thereby, the defendant alleged in his answer that the $1,000.00 he agreed to pay plaintiff was to cover his expenses in procuring the contract to purchase the property and for such improvements and repairs thereon as were paid for by the plaintiff. He admits in his testimony his knowledge of the fact that both buildings were occupied by tenants who were paying rental therefor, which necessarily covered the very expenditures by the plaintiff for which he is making claim, and the defendant collected all of these rents after January 1, 1914, and a small part thereof before that date. He seeks to take advantage of the rental contracts and the expenditures made thereunder by plaintiff, and yet to avoid liability for any of those expenditures without which, it is shown, the rents could not have been collected. It is impossible to believe that the defendant permitted these tenants to occupy the property, which he claimed to be his own, and collected the rents from them without knowing fully the terms under which they were renting his property and that the plaintiff, in the expenditures he was making upon the property, was performing his obligations of landlord, in carrying out the rental contracts without which the collection of rents would have been impossible. After January 1, 1914, defendant claims to have been the owner of the property and admits collecting the rents, yet, he does not deny that, for some months thereafter, plaintiff was without objection from him paying the janitor his salary for his services at the dormitory, was furnishing coal and paying the light and water charges necessarily incident to the operation of that building; and he would have us believe that he neither authorized nor knew of these expenditures and that he is, in nowise, liable to plaintiff to reimburse him for such expenditures, although plaintiff derived no benefit whatever therefrom while the defendant was collecting all of the rents. That such was the arrangement between these parties is so improbable that we are unable to accept it as the reasonable inference from the testimony before us. The defendant's allegations in his answer that the $1,000.00 was to be paid

to the plaintiff to cover his expenditures for improvements and repairs corroborates plaintiff's contention that defendant knew of and he was to be reimbursed for such expenditures in the event he was not able to redeem the property, while there is no testimony from the defendant or any one else that this $1,000.00 was to cover any such expenditures, which is denied by the plaintiff.

When asked upon cross-examination to justify his assumption of the benefits of the rental contracts without liability to assume the burdens as well, the defendant gave the following evasive and unsatisfactory answers:

"I had nothing in the world to do with the contract between Mr. Lester and the school now, knew nothing about that, I had nothing to fulfill." "That was simply Mr. Lester's contract with the school, not mine; Mr. Lester failed to take up the property the first of January; that was his contract with the Board of Trustees, not mine; I had no contract with the Board of Trustees." "Mr. Lester was complying with his contract to evade the law; he made the contract, he was bound for it, not me, if Mr. Lester had taken the property he would have gotten the rent; he had fallen down, he wasn't doing what he agreed to do on the written contract." "He ought to have paid the $19,000.00; he fell down on his contract the first of January." "Mr. Lester had agreed to furnish it to them, I didn't agree to furnish it to them, he was complying with his contract, he couldn't collect rent off of my property, he was complying with his contract, Mr. Lester couldn't collect rent off my property." "Because I didn't rent the property to them, had nothing to do with it."

"Q. Did you pay for $1.00 worth of coal or any light or any fuel or any water from the first of January until the time the school closed? A. Not one dollar; I didn't owe anything. Q. Do you tell us that you made no inquiry when you made this contract as to who the tenant was in the building or what the contract with the tenant was when you bought it? A. No, sir, made no inquiry. Q. How did you know what money to collect as being due from the school? A. R. M. Pool was treasurer of the school and I asked him about it. Q. Name some of the tenants that were in that building; I mean in the dormitory during the first part of January, or during January and February, 1914? A. I didn't rent it to them, I don't remember now, had nothing to do with renting it. Q. Don't you know that as late as about June

that there were a number of tenants still in that building, and that Mr. Lester demanded that the rent should be paid by these tenants to him, and he and you disputed over the matter, and that you and Mr. Gates and I met here in this office of Mr. John C. Gates and we then discussed the matter as to what should be done between you and Mr. Lester, I telling you at the time that Mr. Lester was preparing to bring suit? A. I don't remember, Mr. Miller. Q. Don't you know that one of these tenants was Mrs. W. B. Moore, one was Mr. Phillips, another was Miss Read, and a number of other tenants still known here in Princeton, Mr. Baccus being one of them? . A. I know there were some tenants there. Q. And wasn't Dr. Baker in that building at that time? A. He might have been.''

We feel sure that the great weight of the testimony sustains the contention of plaintiff and refutes that of defendant as to the existence of the verbal contract in reference to the expenditures upon the property; and that the chancellor erred in dismissing such items of plaintiff's claim for these expenditures as were made subsequent to the execution of the written contract.

As to the item of $106.00 which plaintiff claims to have paid for interest accruing upon the $19,000.00 he was to pay for the property between the time he contracted for it and the execution of the deed, this was an obligation assumed by plaintiff prior to the execution of his written contract with defendant and is therefore covered by that rather than the verbal contract and is not chargeable to defendant, hence it was properly disallowed. Subtracting this item which was paid for plaintiff out of rents from the college building and the $131.00 of rents, collected by plaintiff, from the $935.91 claimed by him leaves $698.91 in addition to the $1,000.00 due under the written contract, for which he was entitled to judgment.

2. While we do not think the evidence sustains the defendant's contention as to the tender of the $1,000.00 to the plaintiff, we need not discuss that question, because even if he did tender that sum it was not the amount of his indebtedness to plaintiff as shown above, who was, therefore, justified in refusing to accept it.

Wherefore, the judgment is reversed and cause remanded with directions to enter a judgment in favor of

the plaintiff for $1,000.00, with interest thereon from January 1, 1914, and for $698.91, with interest thereon from date of the filing of the suit, March 27, 1916, and for his costs.